Milligan, J.,
delivered the opinion of the Court.
At the January Term, 1868, of the Circuit Court of Henry County, the defendant was indicted for grand larceny. The indictment contained two counts. One for stealing $30 in United States Treasury notes; and the other $20 in National Bank notes. The property in both counts was laid in J. P. Davis, the prosecutor.
At the May Term, 1868, the defendant was arraigned, and plead “not guilty.” The jury was elected, impaneled and sworn, and the evidence on both sides submitted; the argument of counsel heard, and the charge of the Court delivered; when, upon motion of the Attorney-G-eneral, and by leave of the Court, a nolle prosequi was entered, and the prosecution dismissed. But, upon application of the Attorney-General, the defendant was retained in custody for re-indictment.
At the same term, he was re-indicted for the same offense, and again put upon his trial. The latter indictment is identical with the former, except the property in the latter is laid in J. P. Davis and Elijah Eoust, partners under the name of “Davis & Foust.” To this indictment the defendant pleaded “once in jeopardy” The jury found the plea* in his favor; and the cause is brought here on appeal by the State.
Waiving, for the present, any consideration of the questions arising on the instructions of the Court to the *313 jury, it is assumed that the nolle prosequi entered on the first trial, and the subsequent discharge of the jury, operated as a discharge of the defendant, and that he could not he tried a second time for the same offense.
On this question, there is, in the American Courts, much conflict of authority, growing, principally, out of the difference of opinion , as to the true interpretation of the provisions of the Eederal Constitution, which is carried into the Constitution of this State, and several other sister States: that no person shall he subject for the same offense, to he twice put in jeopardy of life or limb. And it is to be regretted, that, in this State, our own decisions have not been altogether uniform. In Waterhouse’s case, (Martin & Yer. R., 278;) the opinion seems to have been entertained, that it was discretionary' with ,the Court, even in capital cases, to discharge the jury, while in Mahala’s ease, 10 Yer. R., 32, it was held otherwise. In a still later case, (Ward vs. The State, 1 Hum., 253,) it was held, that, after a jury which the prisoner had selected, was sworn and charged, and he put upon his deliverance, and the Court then permitted the Attorney-General to challenge certain jurymen propter defeotum, and they were set aside against the prisoner’s consent, and others substituted in their places, who convicted the prisoner, that, on an appeal to this Court, it was ground of discharge. Judge Turley who delivered the opinion of the Court in this case, says: “By the word ‘charged,’ we think is meant, after the prisoner has been placed in the hands of the jury for *314 trial: that by the practice in England, was always formally done immediately after the jury was sworn, and before the bill of indictment was read and any of the testimony heard. It means, therefore, charged with the fate of the prisoner, and not the testimony or law of the case, as is argued. In this case the jury selected by the prisoner has been discharged by the Court contrary to law, after they were sworn and charged, and against his consent, and he has been forced to trial before a jury not of his choice, who have convicted him of the offense with which he stands charged. To sustain the judgment under such circumstances, would be to endanger the right of trial by jury, and to violate principles well settled by authority in Europe and America. This we cannot do,” etc., etc.
In a still later case, (Morgan vs. The State, 3 Sneed 475,) the doctrine of the case of Mahala vs. The State, 10 Yer., 532, is, in some respects, doubted, but not directly overruled. And again, in the case of Walton vs. The State, 3 Sneed, 687, it is held, that a nolle prosequi, entered with the assent of the Court, even after the jury is impaneled and proof heard, when the indictment is bad, does not operate as an acquittal on the ground there .was no legal jeopardy.
In that case, the Court declined to give any opinion whether a nolle prosequi entered after the traverse jury was elected and sworn on a valid indictment, would entitle the prisoner to his discharge. This is an open question in this State, and must depend for its solution, very much upon the meaning which is to *315 be given to the constitutional provision: “Nor shall any person he subject for the same offense to be twice put in jeopardy of life or limb.” Whether this phrase amounts to anything more than the common law doctrine, involved in the plea of autrefois acquit, has been very much doubted. It is clear the whole doctrine rests upon the principle that no man shall be put in peril of legal penalties more than once upon the same accusation; 4 Black. Com., 335. It has, therefore, been generally agreed, that, when, a prisoner has once been pronounced, “not guilty,” on a valid indictment, or appeal, he cannot afterwards be indicted again upon a charge of having committed the same supposed offense. At common law it means nothing more than that when there has been a final verdict, either of acquittal or conviction, on an adequate indictment, the defendant cannot, a second time, be placed in jeopardy for the particular offense. But the constitutional provision has, by many respectable authorities, been held to mean more than the common law means: that the accused shall not be twice tried for the same offense ; and that, putting him upon trial merely, was putting him in jeopardy of life or limb in the sense of the constitutional provision. And, therefore, that when a jury has once been impaneled, and charged with the trial of the prisoner, the discharge of the jury, unless by the consent of the prisoner, or in case of legal necessity, will operate as an acquittal, and' -prevent his being again put upon trial: 1 Wharton’s Amer. Crim. Law, 5th Ed., 573, and authorities cited.
What constitutes a necessity, which would authorize *316 an inferior tribunal, without the consent of the accused, to discharge the jury; and how far the Court could exercise a discretion in this respect, are questions of no little perplexity, and conflict of authority, which need not now be discussed.
Here the defendant was discharged from the former indictment, by a nolle prosequi entered by the Attor* ney-General, with the assent of the Court, and against the will of the accused. Ordinarily, a nolle prosequi does not have the effect to discharge the prisoner. On this. subject, Wharton in his American Criminal Laws, 5th Edition, 544, says: “The entry of a nolle prosequi by the competent authority, does not put an end to the case, and is no bar to a subsequent indictment for the same offense, unless it is said the jury has been actually impaneled; in which case, the entry operates as an acquittal:” Citing Reynolds vs. The State, 3 Kelly 58, and various other cases.
It .is clear, under the doctrine of Walton’s Case, 3 Sneed, 687, this would not be so, when the indictment was bad, or so defective in form that if the prisoner was found guilty by the jury, he would be entitled to have any judgment which could be entered up against him, reversed. In such a case he is not in the legal jeopardy contemplated by the Constitution, and if acquitted, he is liable to be tried on a new and valid indictment: 1 Bishop Crim. Law, 663, and numerous cases cited.
But the rule upon authority and reason, appears to be otherwise, when, upon a valid indictment, the accused is regularly put upon his trial in a competent Court. In such a case, after the jury is elected and sworn, and *317 thereby becomes a part of the tribunal setting for the prisoner’s trial, and all the preliminary things are ready for the trial, he has then reached the jeopardy from the repetition of which our constitutional rule protects him. The jury is then charged with his deliverance; and his life, undoubtedly, in capital cases, is in jeopardy during their deliberations. It may be conceded, in cases of legal necessity, the jury may be discharged, or a juror withdrawn, a mistrial or ml pros, entered, with or without the prisoner’s consent; but, if there be any thing short of such legal necessity, or the prisoner’s assent, how can the Court, without violating the constitutional provision, take from the prisoner his right to have the jury kept together until they have agreed, so that he may not be put in jeopardy a second time. The signification of the word “jeopardy,” in its common use, is, “exposure to death, loss, or injury, hazard, danger, peril;” and to restrict its meaning to a verdict actually given, is to impose upon it, a limitation which the words “twice in jeopardy” do not mean. Whenever the jury is charged with the deliverance of the prisoner in a capital case, on a valid indictment, he is in jeopardy — in danger of life and limb; and the Court cannot, without sufficient cause, or the assent of the prisoner, discharge the jury, no matter how defective, the proof may be, without entitling him, under the Constitution, to his discharge: 1 Wharton’s American Cr. Law, 573, to 580; Bishop’s Cr. Law, 2d ed., sec. 660, and authors cited; also, 2 Graham & Waterman on New Trials, 88 et seq.
It may be, and we doubt not it is so, that less *318 strictness in offenses punishable in the penitentiary, or by fine and imprisonment, is required, than in offenses punished capitally. In such cases, the judge undoubtedly has a larger discretion, and may exercise it in necessary cases, for the accomplishment of the ends of justice. But in the case under consideration, the nolle 'prosequi, was entered without any lawful excuse whatever. The indictment was, to all intents and purposes, a valid one; and the supposed difficulty, as we infer from the record, was that the proof failed to sustain it. In this, also, we think, the Circuit Judge was mistaken. In the first indictment, the property or money alleged to have been stolen, was laid on J. P. Davis, when the proof showed that it belonged to J. P. Davis and Elijah Foust, partners in trade, under the name of “ Davis & Foust.” However fatal to a conviction this might formerly have been, it seems now, under the Code, sec. 5127, to constitute no valid objection. The language of the section is: “When an offense has been committed upon, or in relation to any personal property belonging to several partners or owners, it is sufficient to charge such property as belonging to one or more of such partners or owners.”
It follows, therefore, that the discharge was wholly unnecessary, and without authority or consent of the prisoner; and by the well settled doctrine, he cannot again be held to answer on a new indictment for the same offense.
The jury under a fair charge, found the plea in favor of the defendant, and we will not disturb the verdict.
Affirm the judgment.